IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CYNTHIA ADAMS; and<br>GARY ADAMS,<br><br>    Plaintiffs,<br><br>v.<br><br>EQUIFAX INFORMATION<br>SERVICES, LLC, *et al.*,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:22-cv-04792-SEG-RDC |

### ORDER AND NON-FINAL REPORT AND RECOMMENDATION

Before the Court are Defendant Equifax Information Services, LLC's motion to enforce settlement agreement, (Doc. 36), and Plaintiffs' motion to lift the stay of all discovery deadlines, (Doc. 72). For the reasons discussed below, the undersigned **RECOMMENDS** the motion to enforce settlement be **GRANTED** and **DENIES** the motion to lift the discovery stay.

### I. BACKGROUND

In December 2022, Plaintiffs Cynthia Adams and Gary Adams filed their complaint, which alleged that multiple defendants, including Equifax, violated the Fair Credit Reporting Act. (Docs. 1, 6). On February 3, 2023, with Plaintiffs'

consent, Equifax moved for an extension of time to answer the complaint, asserting that the parties were actively engaged in settlement discussions. (Doc. 11). The undersigned granted the extension through March 8, 2023. (Doc. 14).

Settlement negotiations between Plaintiffs and Equifax began in December 2022 when Equifax requested a settlement demand via email.[1] (Doc. 36-2 at 1; Hansz Dec. ¶ 2).[2] On December 12, 2022, Plaintiffs' attorney Gary Hansz responded that, "The demand is $5,000 per plaintiff or $10,000 total plus deletion." (Doc. 36-2 at 1–2; Hansz Dec. ¶ 3).

On February 15, 2023, Equifax emailed Plaintiffs, stating that it agreed to "$10k and deletion" and advised that it would send over a settlement agreement. (Doc. 36-2 at 4; Hansz Dec. ¶ 5). Plaintiffs did not respond to the email, but one week later, on February 22, 2023, Plaintiffs' attorney Joon Jeong filed a notice of settlement on this Court's docket. (Doc. 25; Hansz Dec. ¶ 5). The notice stated:

> NOTICE IS HEREBY GIVEN that Plaintiffs and Defendant Equifax Information Services, LLC ("Equifax"), only, in the above-captioned case have reached a settlement. The parties anticipate filing a Notice of Stipulation of Dismissal with Prejudice as to Defendant Equifax, pursuant to Fed. R. Civ. P. 41(a) within 60 days.

---

[1] The undersigned notes that Equifax and Plaintiffs agree on the relevant facts. The factual background presented comes from declarations attached to the parties' motion and response, respectively. (*See* Docs. 36, 40).

[2] Mr. Hansz's declaration is attached to Plaintiffs' response and begins at page 6 of the CM/ECF pagination. (Doc. 40 at 6).

2

(Doc. 25). "Notice of Settlement as to Defendant Equifax Information Services, LLC, only" also appeared in bold, capitalized letters near the top of the filing. (*Id.*).

On March 2, 2023, Equifax sent a settlement agreement to Plaintiffs. (Doc. 36-1 ¶ 5; Hansz Dec. ¶ 7). Four days later, Plaintiffs filed a joint preliminary report and discovery plan ("JPRDP"), which included a brief summary of the case by each party. (Doc. 32). In Equifax's summary, it reported that it "has settled the case with Plaintiff[s], as evidenced by the Notice of Settlement filed on February 22, 2023." (*Id.* at 7). Nowhere in the JPRDP did Plaintiffs oppose that representation.

On March 7, 2023, Plaintiffs' attorney Gary Nitzkin emailed Equifax and asserted that their demand was $10,000 each, not collectively. (Doc. 36-3 at 1; Hansz Dec. ¶ 7). Equifax responded that Mr. Hansz had made a demand for $10,000 total, and it had accepted that offer on February 15, 2023. (Doc. 36-3 at 2). Mr. Nitzkin responded that the original offer was presented in December 2022 and was not still open when Equifax accepted it more than two months later. (*Id.* at 16).

On March 24, 2023, Equifax filed the motion to enforce settlement that is the subject of the instant dispute, which also included a request to stay its discovery and pretrial deadlines pending a ruling on the motion. (Doc. 36). The undersigned granted the request to stay and advised that a recommendation addressing the remaining arguments was forthcoming. The motion to enforce settlement is fully briefed and ripe for disposition.

Relevant to Plaintiffs' motion to lift stay, on August 1, 2023, the undersigned granted a request for referral to mediation from the other Defendants in this matter—National Credit Systems, Inc.; Law Offices of Brett M. Borland, P.C.; Experian Information Solutions; and Trans Union LLC. (Docs. 62, 67). However, after Equifax represented that it would likely participate in mediation if its motion to enforce settlement was denied, the undersigned then stayed the mediation, as well as all discovery and pretrial deadlines, until the motion's disposition. (*See* Doc. 69). On August 22, 2023, Plaintiffs moved to lift the stay, which all Defendants oppose. (Docs. 72, 74, 77). The motion to lift stay is also ripe for consideration.

## II. LEGAL STANDARDS

### A. *Motion to Enforce Settlement*

A district court has inherent power to summarily enforce settlement agreements in a case pending before it. *Ford v. Citizens & S. Nat'l Bank*, 928 F.2d 1118, 1121 (11th Cir. 1991). The construction and enforcement of settlement agreements are governed by the law of the forum state. *Id.* The parties do not dispute that Georgia law applies here.

Under Georgia law, an agreement for settlement and compromise of a pending lawsuit must meet the same formation and enforceability requirements as any other contract. *Blum v. Morgan Guar. Trust Co. of N. Y.*, 709 F.2d 1463, 1467 (11th Cir. 1983). The required elements of a contract are: (1) parties that are able to contract;

(2) consideration; (3) mutual assent of terms; and (4) valid subject matter. O.C.G.A. § 13-3-1. A contract is not formed until there is both an offer and an acceptance of the contract's essential terms. *Id*. § 13-3-2. "[I]t is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense." *S. Med. Corp. v. Liberty Mut. Ins. Co.*, 216 Ga. App. 289, 291, 454 S.E.2d 180, 182 (1995) (quotation marks omitted).

A response to an offer "will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer." *Anderson v. Benton*, 295 Ga. App. 851, 855, 673 S.E.2d 338, 341 (2009) (citation omitted). "To constitute a contract, the offer must be accepted unequivocally and without variance of any sort." *Id*. Any purported acceptance of a settlement offer that modifies or otherwise varies the offer is construed as a counteroffer. *Id*.

### B. Motion to Lift Discovery Stay

"Matters pertaining to discovery are committed to the sound discretion of the district court." *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990). A court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental

5

to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

### III. DISCUSSION

#### A. Motion to Enforce Settlement Agreement

In the instant motion, Equifax argues that it reached an agreement on all essential terms of the settlement with Plaintiffs and, therefore, this Court should enforce the settlement agreement. (Doc. 36). Plaintiffs respond that their offer was not reasonably open for two months when Equifax attempted to accept it. Thus, they maintain that there was no binding settlement. After careful review, the undersigned finds that Plaintiffs and Equifax entered into a binding settlement agreement.

A contract is not enforceable if there was no mutual assent or "meeting of the minds." *Graham v. HHC St. Simons, Inc.*, 322 Ga. App. 693, 695–96, 746 S.E.2d 157, 159 (2013). Only when parties "intended to enter into an agreement" and "expressed their mutual intentions to be bound," have they formed a binding contract. *Jackson Elec. Membership Corp. v. Ga. Power Co.*, 257 Ga. 772, 364 S.E.2d 556, 557–58 (1988). A signed contract is not required to show mutual assent. *See Cochran v. Eason*, 227 Ga. 316, 318, 180 S.E.2d 702, 704 (1971) ("Assent to the terms of a contract may be given other than by signatures."). Georgia courts favor compromise and will enforce settlement agreements with "definite, certain, and unambiguous" terms, even if the parties fail to follow through and sign the final

document. *MetLife Life & Annuity Co. of Conn. v. Akpele*, 131 F. Supp. 3d 1322, 132–728 (N.D. Ga. 2015).

> To determine whether there was mutual assent between the parties:
>
> [C]ourts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent.

*Terry Hunt Const. Co.*, 272 Ga. App. at 551, 613 S.E.2d at 169. A court is allowed to consider extrinsic evidence when deciding whether there was a meeting of the minds—including the circumstances surrounding the making of the contract, such as the parties' correspondence and discussions. *Id.*

When an offer does not prescribe a deadline for acceptance, it must be accepted within a reasonable time. *Wilkins v. Butler*, 187 Ga. App. 84, 84, 369 S.E.2d 267, 268 (1988); *see also First Acceptance Ins. Co. of Ga, Inc. v. Hughes*, 305 Ga. 489, 496, 826 S.E.2d 71, 77 (2019) ("If an instrument containing an offer is silent as to the time given for acceptance, the offer will be construed to remain open for a reasonable time." (quotation marks and citation omitted)). Otherwise, the offer is deemed to have lapsed. *Moore v. Lawrence*, 192 Ga. 441, 443, 15 S.E.2d 519 (1941). The reasonable amount of time to accept an offer is determined by the particular facts in a given case. *Wilkins*, 187 Ga. App. at 84, 369 S.E.2d at 268.

As a preliminary matter, this Court may summarily enforce a settlement agreement, including by making findings of fact. That is in contrast to Georgia law, where a motion to enforce settlement is analyzed using the same framework used when deciding a motion for summary judgment. *See Lexington Nat'l Bail Servs., Inc. v. Spence*, No. 1:03-CV-2904-JEC, 2007 WL 951767, at *3 (N.D. Ga. Mar. 28, 2007); *Walls v. Walls*, 260 Ga. App. 673, 675, 580 S.E.2d 564, 566 (2003) ("To prevail, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element." (quotation marks omitted)). When applying this standard, Georgia appellate courts have held that a trial court may not make factual determinations or weigh evidence because those questions must go to a jury. *See Costello Indus., Inc. v. Eagle Grooving, Inc.*, 308 Ga. App. 254, 256–57, 707 S.E.2d 168, 169–70 (2011) (holding that summary judgment was inappropriate when the parties presented conflicting evidence regarding the contract formation and, therefore, a genuine issue of material fact remained); *Terry Hunt Const. Co. v. AON Risk Servs., Inc.*, 272 Ga. App. 547, 552, 613 S.E.2d 165, 169 (2005) (reversing the grant of summary judgment and holding that the trial court was not authorized to weigh the parties' conflicting evidence). However, under federal law, a motion to enforce a settlement agreement is a purely equitable claim that is resolved by a court. *Ford*, 928 F.2d at 1121. The Eleventh Circuit has thus held that, when considering a

motion to enforce settlement, a district court may decide any factual disputes because federal procedure does not entitle the parties to a jury.[3] *Id.*

Moving on from procedure to the merits, the parties' arguments center on whether Plaintiffs' offer remained open at the time of Equifax's acceptance. Under the circumstances presented here, the undersigned finds that Equifax's delay in accepting Plaintiffs' offer was not so unusually delayed that it was clearly unreasonable as a matter of law. *Compare First Acceptance Ins. Co. of Ga., Inc.*, 305 Ga. at 489, 826 S.E.2d at 73 (indicating that, depending on the particular circumstances, 41 days could be a reasonable amount of time for an offer to remain open if there was no deadline for acceptance and the offer had not yet been withdrawn), *with Wilkins*, 187 Ga. App. at 84, 369 S.E.2d at 268 (holding that a delay of one year between offer and acceptance was unreasonable as a matter of law). Thus, the Court must decide whether the record shows that the parties had a "meeting of the minds" as to the settlement's essential terms.

The record here supports that Equifax's acceptance of Plaintiffs' offer was valid. Plaintiffs communicated their offer to Equifax on December 12, 2022; did not

---

[3] While the Eleventh Circuit has also held that parties must be allowed an evidentiary hearing when material facts concerning the existence of a settlement agreement are in dispute, the parties here are in agreement about the material facts. *See Berk v. Equifax, Inc.*, No. 1:20-CV-1279-TWT-CCB, 2020 WL 10051521, at *4 (N.D. Ga. Dec. 2, 2020) (citing *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994)), *R. & R. adopted*, 2021 WL 2391465 (N.D. Ga. Mar. 18, 2021).

include an express deadline; and at no point withdrew their offer before Equifax's acceptance in February 2023. *See First Acceptance Ins. Co. of Ga., Inc.*, 305 Ga. at 489, 826 S.E.2d at 73. This is not a situation where Equifax waited so long to accept the offer that its essential nature had changed. *See Graham*, 322 Ga. App. at 696–97, 746 S.E.2d at 160–61 (holding that no settlement agreement existed when a plaintiff attempted to accept the defendant's offer to settle after a court granted its motion for summary judgment); *Wallace v. Publix Super Markets, Inc.*, 637 F. Supp. 3d 1361, 1368 (S.D. Ga. 2022) (finding that there was no meeting of the minds when a plaintiff attempted to accept the defendant's pre-suit offer after it filed a motion for summary judgment). In fact, Equifax's acceptance occurred at an early stage in this litigation. At the time of acceptance, Equifax had not yet filed an answer and the first Defendant to file an answer to Plaintiffs' complaint did so only on February 7, 2023. (*See* Doc. 12). Of particular note is that Equifax requested only one extension of time to file its answer and, when doing so, indicated its reason for the request was that the parties were engaged in settlement discussions. Plaintiffs consented to that extension, and their counsel's electronic signature appears on Equifax's motion. (Doc. 11). Then, only 12 days after requesting the extension, Equifax sent its email accepting Plaintiffs' offer. The undersigned finds that the underlying facts show the 65-day delay between Plaintiffs' offer and Equifax's acceptance was reasonable.

Nevertheless, even if the delay was unreasonable, the undersigned finds that a binding contract was still formed. That is because Plaintiffs' actions following Equifax's acceptance indicate that they assented to the late acceptance. When a party accepts an offer after its stated expiration and the offeror assents to the late acceptance, the offeror is bound to that agreement. *Reny v. Sneed*, 285 Ga. App. 722, 724, 647 S.E.2d 379, 380–81 (2007) ("It is no less true, however, that an acceptance of an offer after the time limited is binding on the offeror if he assents to the acceptance after it is made." (quotation marks and citation omitted)); *see Century 21 Pinetree Props. v. Cason*, 220 Ga. App. 355, 357, 469 S.E.2d 458, 461 (1996) ("If a contract requires that an offer be accepted within a stated time, no contract is formed when the offer is accepted after the stated time, unless the late acceptance became a counteroffer which was then accepted by the original offeror.").

The record supports that Plaintiffs' conduct was inconsistent with a refusal of Equifax's acceptance. "Assent to the terms of the agreement can be implied from the circumstances, and conduct inconsistent with a refusal of the terms raises a presumption of assent upon which the other party can rely." *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985) (citing *Smith v. Hornbuckle*, 140 Ga. App. 871, 875, 232 S.E.2d 149, 153 (1977)). While Plaintiffs did not respond to Equifax's acceptance via email, their counsel filed a notice of settlement on the docket only one week later. (*See* Doc. 25). Additionally, four days after Equifax sent a settlement

agreement to Plaintiffs for signatures, Plaintiffs filed the JPRDP in which Equifax reported the settlement. That Plaintiffs entered those filings shortly after receiving the acceptance and settlement agreement, respectively, evidenced their assent to Equifax's acceptance. *See Meunier Carlin & Curfman, LLC v. Scidera, Inc.*, 324 F. Supp. 3d 1269, 1279 & n.7 (N.D. Ga. 2018) (finding that mutual assent was apparent when a defendant acted consistently with the contract in dispute), *aff'd*, 813 F. App'x 368 (11th Cir. 2020); *Cumberland Contractors, Inc. v. State Bank & Tr. Co.*, 327 Ga. App. 121, 128, 755 S.E.2d 511, 519 (2014) (holding that there was a binding settlement agreement when the essential terms were memorialized in an email even when the defendants later refused to sign the settlement documents); *Mills v. Innovative Energy Glob., Ltd.*, No. 3:09CV294-MCR-CJK, 2011 WL 1299938, at *7 (N.D. Fla. Mar. 31, 2011) (applying Georgia law and finding that a contract was supported by mutual assent when the offeror confirmed his assent via email to the other party's late acceptance).

A closer look at those filings provides even more evidence of Plaintiffs' assent. For instance, Plaintiffs' notice of settlement did not indicate that negotiations were still ongoing or that a settlement had been reached only in principle. Furthermore, Plaintiffs did not contest Equifax's report of the settlement in the JPRDP. Plaintiffs' actions and representations were inconsistent with a refusal of Equifax's acceptance. *See Maley v. Corizon Health, Inc.*, No. CV416-060, 2019 WL

5868261, at *3 (S.D. Ga. Nov. 8, 2019). Therefore, a reasonable person in Equifax's position would have interpreted their conduct to be a manifestation of assent. *See Terry Hunt Const. Co.*, 272 Ga. App. at 551, 613 S.E.2d at 169.

Furthermore, there is no conflicting evidence in the record before the Court regarding the events surrounding the settlement. As an example, Plaintiffs do not contend that when Equifax sent its acceptance, they responded that no contract existed or that their offer had expired. *Cf. Costello Indus., Inc.*, 308 Ga. App. at 256–57, 707 S.E.2d at 169–70 (holding that summary judgment was inappropriate in part because the defendant showed that, after it received a notice from the plaintiff confirming that the two had won a construction bid, it immediately responded that no valid contract existed between them). They also do not assert that they provided Equifax with any conflicting information regarding the settlement before docketing the notice of settlement. To be sure, Plaintiffs agree that they first advised Equifax that its acceptance was too late on March 7, 2023—which was 20 days after they filed the notice of settlement, 5 days after Equifax sent over an agreement for them to sign, and 1 day after they filed the JPRDP reporting the settlement. *See Forbo Flooring, Inc. v. Falcone Glob. Sols., LLC*, No. 1:19-CV-2876-MHC, 2022 WL 4596639, at *13 (N.D. Ga. July 22, 2022) (finding that the defendant had identified no ambiguous language or communications between the parties to rebut the plaintiff's evidence that the parties agreed to be bound by the disputed contract),

13

*reconsideration denied*, 2022 WL 17908422 (N.D. Ga. Nov. 10, 2022). At no point have Plaintiffs argued that their notice of settlement was somehow fraudulent. Moreover, they have not even attempted to explain why they filed the notice if they did not believe there was a settlement agreement. The undisputed facts here show that Plaintiffs made an offer that articulated the essential settlement terms, Equifax accepted that offer without modification, and Plaintiffs responded by filing a notice of settlement. By filing that notice of settlement, Plaintiffs' counsel represented his clients' intent to consent to the settlement agreement. *See Cannady v. Automatic Data Processing, Inc.*, No. 1:05-cv-2855-WSD, 2006 WL 3422424, *2 (N.D. Ga. Nov. 28, 2006) ("It is well-settled under Georgia law an 'attorney's consent to [a settlement] agreement is binding on his client.'" (quotation marks and citation omitted)).

Moreover, because there was already a binding settlement agreement in place, Plaintiffs' later actions—*i.e.*, the email stating there was no contract and the withdrawal of their notice of settlement after Equifax filed the instant motion to enforce—did not revoke their mutual assent to the settlement. *See Mills v. Innovative Energy Glob., Ltd.*, 2011 WL 1299938, at *7; *see also Capitol Materials, Inc. v. Kellogg & Kimsey, Inc.*, 242 Ga. App. 584, 586, 530 S.E.2d 488, 491 (2000) (holding that an enforceable settlement agreement existed because a plaintiff's offer to settle the pending claim against the defendant was sufficient to establish mutual assent).

The undersigned thus concludes that Plaintiffs entered a binding settlement with Equifax.

The law favors compromise, "and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced[.]" *Clough Mktg. Servs., Inc. v. Main Line Corp.*, 313 F. App'x 208, 211 (11th Cir. 2008) (quotation marks and citation omitted). The undersigned agrees with Equifax's contention that Plaintiffs' insistence that there was no binding contract amounts to "buyer's remorse." *See Capitol Materials, Inc.*, 242 Ga. App. at 587, 530 S.E.2d at 492 ("In our view, this is a case where an agreement as to terms was clearly made and then someone changed his mind and no longer wanted to settle the case."). Accordingly, the undersigned **RECOMMENDS** that Equifax's motion to enforce settlement be **GRANTED**.

### B. *Motion to Lift Stay*

In Plaintiffs' motion to lift stay, they argue that mediation without further discovery will likely be unproductive. (Doc. 72). They contend that conducting depositions would significantly narrow the factual issues in this case and lead to a more efficient resolution. All Defendants oppose the motion to lift stay (Docs. 74, 77). They collectively argue that staying discovery is procedurally proper and all parties would benefit from continuing the stay. After careful consideration, the undersigned **DENIES** the motion to lift stay.

Decisions surrounding a stay of discovery and other pre-trial deadlines when mediation or a motion to enforce settlement remain pending are within a court's discretionary authority. *See Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) ("[D]istrict courts have inherent, discretionary authority to issue stays in many circumstances and granting a stay to permit mediation (or to require it) will often be appropriate."); *Berk v. Equifax, Inc.*, No. 1:20-CV-1279-TWT-CCB, 2020 WL 10051499, at *2 (N.D. Ga. Aug. 27, 2020) (noting that "a stay [wa]s the best use of resources for all parties given the fact that the pending motion to enforce the settlement agreement, if granted, would entirely resolve the case and eliminate the need for any responsive pleadings or discovery.").

When determining whether to stay discovery, "a court should balance the prejudice occasioned by the delay against the burden of proceeding with discovery." *Principle Sols. Grp., LLC v. Ironshore Indem., Inc.*, No. 1:15-CV-4130-RWS, 2016 WL 9049187, at *1 (N.D. Ga. Mar. 22, 2016). Plaintiffs contend that they are prejudiced by the continued stay because they cannot schedule depositions. The undersigned finds that any prejudice is significantly reduced by the costs and fees Plaintiffs and Defendants could save in the event a settlement is reached. Furthermore, the mediation will be scheduled shortly after the District Judge addresses the undersigned's recommendation as to the motion to enforce settlement. *See Chico v. Dunbar Armored, Inc.*, No. 17-22701-CIV, 2017 WL 4476334, at *3

(S.D. Fla. Oct. 6, 2017) (finding that any prejudice cause by a discovery stay would be significantly reduced by the brevity of the requested stay and the costs and fees the parties could save in the event of settlement). Moreover, if the District Judge adopts the undersigned's recommendation, Equifax will no longer be a party in this matter.

The undersigned finds that the parties' best interests in this case support the continuation of the stay until after the soon-to-be-scheduled mediation. *See Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2018 WL 3730868, at *2 (S.D. Fla. Apr. 27, 2018) (noting that courts have granted motions to stay discovery while parties engage in mediation because doing so might conserve the parties' resources and promote judicial economy). Accordingly, Plaintiffs' motion to lift the discovery stay, (Doc. 72), is **DENIED**.

## IV. CONCLUSION

For the reasons above, the undersigned **RECOMMENDS** that Equifax's motion to enforce settlement, (Doc. 36), be **GRANTED**. Additionally, the undersigned **DENIES** Plaintiffs' motion to lift the discovery stay, (Doc. 72).

IT IS SO **RECOMMENDED and ORDERED** on this 6th day of October 2023.

_____
REGINA D. CANNON
United States Magistrate Judge